UNITED STATES DISTRICT COURT

Northern District of California

Oakland Division

| | |
|---|---|
| EARL BROWN, SR, *et al.*, | No. C 11-02162 LB |
| Plaintiffs,<br>v. | **ORDER DENYING MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| CITY AND COUNTY OF SAN FRANCISCO, *et al.*, | [ECF No. 27] |
| Defendants. | |

## I. INTRODUCTION

Pursuant to 42 U.S.C. § 1983 and California state law, Plaintiffs Earl Brown, Sr. and Helen Brown – individually and as the personal representatives of the estate of their son, decedent Earl Brown, Jr. ("Decedent") – asserted several claims arising from the arrest and detention of Decedent. Complaint, ECF No. 1.[1] Defendant City and County of San Francisco ("CCSF") moved to dismiss the original complaint in its entirety. Motion, ECF No. 7. Plaintiffs did not challenge the motion to dismiss as it related to their wrongful arrest claim but otherwise opposed the motion. Opposition, ECF No. 10 at 9 n.1. The court granted CCSF's motion to dismiss without prejudice and with leave to amend because Plaintiffs did not allege sufficient facts for the court to reasonably infer the application of unreasonable force or racially discriminatory conduct but, instead, relied on the

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronic page number at the top of the document, not the pages at the bottom.

1  proposed inference that Decedent's death after the use of force implied that the use of force was
2  excessive. Order, ECF No. 24 at 10. Plaintiffs subsequently filed an amended complaint, adding
3  additional details to their factual allegations. *See* Amended Complaint, ECF No. 26 at 4. CCSF
4  again moves to dismiss, arguing that Plaintiffs state facts that justify the use of force against
5  Decedent and individual defendants are entitled to qualified immunity. Second Motion to Dismiss,
6  ECF No. 27 at 2.

7  After considering the case history, the parties' papers, and law, the court determines that this
8  matter is appropriate for resolution without oral argument. N.D. Cal. L.R. 7-1(b). The court now
9  denies CCSF's motion to dismiss Plaintiffs' first amended complaint.

## II. FACTS

On March 28, 2010, San Francisco police officers arrested Decedent – an HIV-positive, African-American male – for allegedly having threatened a bakery worker. Amended Complaint, ECF No. 26 at 3, ¶ 13. When the officers tried to remove Decedent, he resisted and bit one of the officers. *Id.* The officers then struck Decedent. *Id.* However, Decedent was healthy following the incident and was medically cleared and booked into the jail. *Id.* at 3-4, ¶ 13. At the jail's DNA swabbing station, Decedent reportedly became combative, and was placed in handcuffs with his hands cuffed behind his back. *Id.* at 4, ¶ 14. Decedent was then placed in a "safety cell," by the defendant deputy sheriffs who restrained Decedent by applying pressure to his extremities, hips, and torso while Decedent lay prone. *Id.* at ¶ 15. The restraint lasted for a period of 10 to 12 minutes. *Id.* During this time, the officers placed Decedents' legs in leg restraints and then later removed them. *Id.* During this incident, Decedent was allegedly pulling his knees forward underneath him toward his chest at times. *Id.*

Defendant Deputy Rodriguez claimed that Decedent has been yelling incoherently, but stopped yelling shortly before he left Decedent's cell. *Id.* at 5, ¶ 17. After the Defendants had left the cell, Defendant Deputy Rodriguez claimed he then filled out paperwork without monitoring Decedent for about two minutes. *Id.* Then he asked Decedent if he needed some water, and Decedent did not respond. *Id.* Defendant Deputy Rodriguez checked Decedent's pulse and found that Decedent was dead. *Id.*

1    Although Defendant Deputy Rodriguez explicitly denied to coroner's investigator Ellen Moffatt
2 that anyone was on Decedent's back, a Federal Bureau of Investigation report regarding the death of
3 Decedent found otherwise. *Id.* at 4-5, ¶ 16.

4    CCSF's medical examiner determined that Decedent died due to methamphetamine intoxication.
5 *Id.* at 5, ¶ 18. Plaintiffs' expert found the conclusions of the San Francisco Medical Examiner's
6 report pertaining to the death of Decedent to be wrong, noting that methamphetamine toxicity also
7 causes an elevated body temperature, which was not present in Decedent.. *Id.* at 5, ¶ 19. Plaintiffs
8 further allege that the use of excessive force, including, but not limited to, downward compressive
9 force on Decedent's torso, thereby compressing his chest, while decedent was prone and already
10 restrained by handcuffs and leg restraints, caused Decedent's death through asphyxiation. *Id.* at 6, ¶
11 21.

## III. LEGAL STANDARDS

### A. Motion to Dismiss

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 557.) "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555 (internal citations and parentheticals omitted).

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *See id*. at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007).

If the court dismisses the complaint, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)).

**B. 42 U.S.C. § 1983**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Here, Plaintiffs allege that the defendants applied excessive force in violation of the Fourth Amendment and violated the Equal Protection clause of the Fourteenth Amendment.

**C. Qualified Immunity**

In assessing whether the officers are entitled to qualified immunity, the court considers whether (1) the officer's conduct violated a constitutional right; and (2) if a violation occurred, whether the right was "clearly established in light of the specific context of the case." *Al-Kidd v. Ashcroft*, 580 F.3d 949, 964 (9th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). While these questions are traditionally addressed in that order, the trial court may "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

**IV. DISCUSSION**

**A. Defendant's Request for Judicial Notice of the Medical Examiner's Report**

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint. *In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 102 F.3d 1524, 1537 (9th Cir. 1996), *rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998). However, a court may consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). And courts in this district have taken judicial notice of a medical examiner's report. *See, e.g., Snyder v. Enterprise*

*Rent-A-Car Co. of San Francisco*, 392 F.Supp.2d 1116, 1123 n.2 (N.D. Cal. 2005). Here, however, the court does not rely on the medical examiner's report for its conclusions.

### B. Excessive Force Claim

The Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment. *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989). And "the Fourth Amendment sets the 'applicable constitutional limitations' for considering claims of excessive force during pretrial detention." *Gibson v. County of Washoe*, 290 F.3d 1175, 1197 (9th Cir. 2002). Accordingly, the court evaluates Plaintiffs' claim of excessive force under the Fourth Amendment's objective reasonableness standard. *See Pierce v. Multnomah County, Or.*, 76 F.3d 1032, 1043 (9th Cir. 1996); *Lolli v. County of Orange*, 351 F.3d 410, 415-17 (9th Cir. 2003) (applying Fourth Amendment standards for excessive force claim brought by a pre-arraignment detainee); *Gibson*, 290 F.3d at 1197. In making this determination, the court balances "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396; *Lolli*, 351 F.3d at 415. This means that a court must "'balance the [type and] amount of force applied against the need for that force.'" *Bryan v. McPherson*, No. 08-55622, 2010 WL 2431482, * 2 (9th Cir. June 18, 2010) (applying *Graham* balancing test to the use of tasers) (*quoting Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003)).

The following factors are relevant when evaluating the need for force: (1) the severity of the crime; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is resisting arrest or trying to evade arrest by flight. *Graham*, 490 U.S. at 396-97. Another relevant consideration is that just because force later appears unnecessary does not mean that it is unreasonable force barred by the Fourth Amendment. The reasonableness is judged from the perspective of a reasonable officer on the scene, not with the 20/20 vision of hindsight. *See id.* Officers often make "split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.*

CCSF argues that alleging merely that the deputies used force and Brown died does not state a claim. Defendants' Brief, ECF No. 28 at 8. CCSF further contends that holding down a

combative prisoner by his back does not constitute excessive force. *Id.* Also, CCSF asserts that Plaintiffs in their complaint rely on the medical examiner report, which, according to CCSF, does not support Plaintiffs' claims that Brown died from compression asphyxiation. *Id.* at 8-9.

As discussed in the court's previous order, an officer may use force to control a pretrial detainee who is resisting being placed in a safety cell. *Gibson*, 290 F.3d at 1198. Thus, Plaintiffs' original allegations, which stated only that the officers used force and the detainee died, were not sufficient to imply a constitutional violation. *See id.*; *see also Hunt ex rel. Chiovari v. Dart*, 754 F.Supp.2d 962, 977 (N.D. Ill. 2010) (rejecting the plaintiff's *res ipsa loquitur* theory of liability where the plaintiff claimed that Hunt's death while in the sheriff's custody, coupled with evidence of head injuries, demonstrated that Hunt's death was due to an assault).[2] However, court have found constitutional violations where "prone and handcuffed individuals in an agitated state have suffocated under the weight of restraining officers." *Drummond v. City of Anaheim*, 343 F.3d 1052, 1056-57 (9th Cir. 2003); *see also Arce v. Blackwell*, 294 Fed. Appx. 259, at *1-*2 (9th Cir. 2008).

Here, Plaintiffs allege that "Decedent died from asphyxiation during restraint, caused by Defendants' unreasonable use of force." Amended Complaint, ECF No. 26 at 6, ¶ 19. More specifically, Plaintiffs state, "The use of excessive force, including, but not limited to, downward compressive force on Decedent's torso, thereby compressing his chest, while decedent was prone and already restrained by handcuffs and leg restraints, caused Decedent's death through asphyxiation." *Id.*, ¶ 21. Plaintiffs also allege that their medical expert "found the conclusions of the San Francisco Medical Examiner's report pertaining to the death of Decedent to be wrong" because methamphetamine toxicity causes an elevated body temperature, which was not present in Decedent. *Id.* at 5, ¶ 19. Plaintiff analogizes the facts in the instant matter to those in *Drummond* and *Madrid v. City of Fresno*, 1:08-cv-00098 OWW SMS, 2011 U.S. Dist. LEXIS 17872 (E.D. Cal. Feb. 23,

---

[2] CCSF again argues that Plaintiffs failed to allege facts that would permit a fact-finder to determine that Decedent died from the use of the defendant deputies' use of force. Reply, ECF No. 31 at 7. First, although Decedent's death raises the specter of significant force having been used, the death itself is not necessarily required to state an excessive force claim. Second, at this stage, it is sufficient that Plaintiffs have made allegations that dispute the conclusions in the medical examiner's report and tie the defendants' actions to the harm.

1   2011). Opposition, ECF No. 30 at 10-11.

2   In *Drummond*, the officers determined that they needed to take Drummond – an individual with
3   a history of mental illness – into custody for his own safety. 343 F.3d at 1054. The officers leaned
4   on his neck and upper torso despite Drummond's claims that he could not breathe and that the
5   officers were choking him. *Id.* at 1055. Drummond ultimately expired during the incident. *Id.* The
6   court determined that the force allegedly employed was severe and, under the circumstances,
7   capable of causing death or serious injury. *Id.* at 1056. The court then acknowledged that some
8   force was justified because of Drummond's potential danger to himself but that this need was
9   mitigated by the lack of an underlying crime and his history of mental illness. *Id.* at 1057-58. In
10  balancing the need for force and the amount of force that was employed, the court concluded that
11  "[t]he officers—indeed, any reasonable person—should have known that squeezing the breath from
12  a compliant, prone, and handcuffed individual despite his pleas for air involves a degree of force that
13  is greater than reasonable." *Id.* at 1059.

14  In *Madrid*, Madrid admitted to having used methamphetamine and then fled from a police
15  officer. 2011 U.S. Dist. LEXIS 17872, at *5-*6. Police officers caught Madrid, who resisted. *Id.* at
16  8. The officers attempted to subdue Madrid by deploying a TASER and striking him. *Id.* at *9-*12.
17  The officers also applied pressure to Madrid's body after he was handcuffed as they attempted to
18  apply a hobble. *Id.* at *12-*13. The coroner determined that Madrid died from "pulmonary arrest
19  during restraint in a person under the influence of Methamphetamine" but did not rule out asphyxia.
20  *Id.* at *14. As to Madrid's excessive force claim, the court denied the officers' motion for summary
21  judgment on the basis of qualified immunity. *Id.* at *43-*50.

22  CCSF attempts to distinguish the cases relied upon by Plaintiffs, arguing that the type and
23  quantum of force used by the deputies falls far short of the force used in either *Drummond* or
24  *Madrid*. Reply, ECF No. 31 at 6. CCSF also claims that the circumstances as alleged justify a
25  greater use of force than in either of those cases. *Id.* CCSF contends that the deputies' actions fall
26  squarely into the type of constitutional force set forth in *Gibson v. County of Washoe*, 290 F.3d 1175
27  (9th Cir. 2002). *Id.*

28  In its attempts to distinguish the present matter from *Drummond* and *Madrid*, CCSF cites

1  *Gregory v. County of Maui*, 523 F.3d 1103 (9th Cir. 2008). *Id.* In *Gregory*, Gregory threatened
2  police officers with a pen. 523 F.3d at 1105. The officers were able to restrain and disarm Gregory.
3  *Id.* During the incident, Gregory claimed that he could not breathe but an officer dismissed this
4  claim because Gregory could still talk. *Id.* After the officers handcuffed Gregory, they found that
5  he had stopped breathing. *Id.* An autopsy revealed that Gregory suffered from severe heart disease
6  and that Gregory was under the influence of marijuana at the time of the confrontation. *Id.* The
7  medical expert concluded that the marijuana use likely contributed to the heart attack. *Id.*
8  Regarding Gregory's statements that he could not breathe, the medical expert opined that a sensation
9  of shortness of breath is a common symptom of a heart attack and determined that Gregory was
10 breathing during the struggle since he was able to talk. *Id.* The court found that Gregory had
11 assaulted another individual earlier, possibly was on drugs, acted in a bizarre manner, and threatened
12 the officers with a pen—all of which warrants the use of force. *Id.* at 1106. The court further
13 observed that the officers did not strike Gregory or use any weapons, emphasizing the lack of
14 significant force. *Id.* at 1107.

15    In this case, the officers responded to a report that Decedent had threatened a worker at a bakery
16 and had an outstanding traffic warrant. Amended Complaint, ECF No. 26 at 3, ¶ 13. Later, at the
17 jail's DNA swabbing station, Decedent reportedly became combative, and was placed in handcuffs
18 with his hands cuffed behind his back. *Id.* at 4, ¶ 14. Decedent was then placed in a "safety cell,"
19 by the defendant deputy sheriffs who restrained Decedent by applying pressure to his extremities,
20 hips, and torso while Decedent lay prone. *Id.* at ¶ 15. During this incident, Decedent allegedly was
21 pulling his knees forward underneath him toward his chest at times. *Id.* The allegations regarding
22 Decedent's arrest do not involve Decedent's threatening the officers with a weapon. Given the facts,
23 a jury might find that Decedent did not pose a threat that potentially warranted the use of a
24 significant amount of force, distinguishing this case from *Gregory*. And a jury might find that
25 Decedent's attempts at pulling his knees underneath his chest (i.e., the actions that CCSF
26 characterizes as Decedent's "resistance") were signs of breathing distress and not the vigorous
27 fighting back that was seen in *Gibson*. Thus, these factors mitigate in favor of rejecting CCSF's
28 argument that Plaintiffs failed to state a constitutional violation.

Additionally, resolution of this case on a motion to dismiss is particularly problematic given that the individual in the best position to provide further details has expired. As the Ninth Circuit has explained, "[c]ases in which the victim of alleged excessive force has died 'pose a particularly difficult problem' in assessing whether the police acted reasonably, because 'the witness most likely to contradict [the officers'] story . . . is unable to testify.'" *Gregory* , 523 F.3d at 1107 (quoting *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994)). Thus, the court must assess the evidence to determine the credibility of the officers' account of the events. *Id.* And, following from these precepts, courts "have denied summary judgment to defendant police officers in cases where 'a jury might find the officers' testimony that they were restrained in their use of force not credible, and draw the inference from the medical and other circumstantial evidence that the plaintiff's injuries were inflicted on him by the officers' use of excessive force.'" *Id.* (quoting *Santos v. Gates*, 287 F.3d 846, 852 (9th Cir. 2002)). These difficulties are even more pronounced in the motion-to-dismiss phase.

**C. Qualified Immunity Defense**

CCSF argues that, even if the court rejects its argument that there was no constitutional violation, the individual defendants are entitled to qualified immunity. Defendants' Brief, ECF No. 28 at 10. First, CCSF argues that Plaintiffs admit that they cannot identify the deputy who used the specific acts they claim to be excessive. *Id.* Second, CCSF argues that Plaintiffs cannot show that in the factual context confronting the deputies here, placing a knee on a combative inmate's back while taking off leg shackles is "clearly established" as unconstitutional. *Id.*

With regard to CCSF's first argument, the court notes that all of the named officers are alleged to have engaged in the prolonged restraint of Decedent and that the discovery process should reveal which of the officers engaged in the specific act that allegedly led to the asphyxiation. With regard to CCSF's second argument, CCSF mischaracterizes the inquiry—the issue is whether the officers should have known that "squeezing the breath from a compliant, prone, and handcuffed individual . . . involves a degree of force that is greater than reasonable." *Drummond*, 343 F.3d at 1059. Accordingly, the court rejects CCSF's argument that the defendant deputies are entitled to qualified immunity at this stage.

**D. *Monell* Claim**

A local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). But a city may be liable where the execution of its policy or custom inflicts the injury. *Id.* And inadequate training may serve as the basis for § 1983 liability against a municipality "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

Plaintiffs' amended complaint includes allegations regarding CCSF's specific customs, practices, and polices that pertain to the failure to train the officers. Amended Complaint, ECF No. 26 at 9-10, ¶¶ 33-37. And, in its brief, CCSF only challenges the *Monell* claim on the basis that Plaintiffs failed to allege an underlying constitutional violation. Defendants' Brief, ECF No. 28 at 10. Accordingly, the court finds that Plaintiffs have stated a claim for a *Monell* violation.

### E. Other Claims

CCSF moves to dismiss Plaintiffs' other claims on the basis that Plaintiffs' failed to state a constitutional claim. Defendants' Brief, ECF No. 28 at 10-11. Having determined that Plaintiffs sufficiently stated an excessive force claim, the court rejects CCSF's arguments.

### V. CONCLUSION

For the foregoing reasons, the court **DENIES** CCSF's motion to dismiss Plaintiffs' first amended complaint. CCSF's answer is due fourteen days from the date of this order. Fed. R. Civ. P. 12(a)(4). An initial case management conference is set for March 1, 2012 at 10:30 a.m.

This disposes of ECF No. 27.

**IT IS SO ORDERED.**

Dated: January 17, 2012

_____
LAUREL BEELER
United States Magistrate Judge